UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRADFORD ROSS,

    Plaintiff,

Case No. 1:09-cv-531

Hon. Robert J. Jonker

v.

UNKNOWN DUBY, *et al.*,

    Defendants.
            /

**REPORT AND RECOMMENDATION**

  This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendants' motion for summary judgment (docket no. 18).

**I.  Background**

  In his *pro se* complaint, plaintiff seeks injunctive relief and unspecified monetary damages for an alleged violation of his civil rights while he was incarcerated at the Oaks Correctional Facility (ECF). Specifically, plaintiff alleged that he was denied group religious services and participation in the Kosher Meal Program at ECF. Compl. at p. 3 (docket no. 1). Plaintiff has named two defendants: ECF Chaplain Paul Duby; and Correctional Facilities Administration (CFA) Special Activities Coordinator Michael Martin.

**II.  Legal standard**

  Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim,

a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Defendants seek summary judgment because plaintiff failed to properly exhaust his administrative remedies prior to filing this action. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

2

### III. Lack of Exhaustion

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive 03.02.130 (eff. July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the giveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶ V. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not

3

receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

The record reflects that plaintiff filed one grievance regarding his alleged deprivations of religious food and services on March 23, 2009, which is identified as Grievance no. ECF-2009-03-0601-27B ("0601"). *See* Exh. B attached to defendants' brief (docket no. 19-4). The Step I grievance was denied on May 25, 2009. *Id.* In denying the grievance, the respondent stated that a religious service "is not required to be conducted if there is less than 5 prisoners who actively participate in the religious activities of a group." *Id.* Plaintiff filed a Step II appeal (the date of which is illegible). *Id.* Warden C. Curtin denied the Step II appeal on May 19, 2009. *Id.* In denying the appeal, Warden Curtin noted that plaintiff's grievance was coded by the Step I Grievance Coordinator under the designation "27 B," i.e., "Non-Grievable Issues - Content of Department wide policy and procedure." *Id.* It appears that plaintiff stated the issue differently in his Step II appeal, as indicated by Warden Curtin's response:

> Your Step II Appeal states that your Reason for Appeal is that the Step I response does not address the denial of a Kosher Diet. A review of PD.05.03.150 "Religious Beliefs and Practices of Prisoners" states in section SS: "**a prisoner may eat from a religious menu only with approval of the CFA Special Activities Coordinator**." On 03/15/09 Mike Martin, Special Activities Coordinator denied your request for the Kosher Diet based upon the external indicators of your interview with Chaplain Duby.
>
> Based on the record and investigation provided in this matter, I find no violation of policy. For these reasons noted, your Step II grievance is denied.

*Id.* (emphasis in original).

4

James Armstrong, Manager of the Grievance and Appeals Section of the Michigan Department of Corrections, stated in an affidavit that his review of the relevant records indicated that "plaintiff did not appeal grievance ECF-09-03-0601-27B through the third step of the grievance process." Armstrong Aff. at ¶ 16 (docket no. 19-5). Plaintiff disputes Mr. Armstrong's affidavit, claiming that his Step III appeal was omitted due to a computer glitch, human error or the change in the grievance code. In support of his claim, plaintiff has provided a copy of a "Third Step Grievance Response" from Mr. Armstrong dated August 31, 2009. *See* Third Step response (docket no. 21-3). This response indicates that a grievance code for no. 0601 was amended from "27b" to "20z." *See id.* (identifying the grievance as "ECF-09-03-601-27b, **amended 20z**") (emphasis in original). In this Third Step response, Mr. Armstrong states that the grievance was rejected but later responded to at the local level and that "[t]he grievance code was changed to reflect the issue grieved in accordance with the provisions of Policy Directive and Operation Procedure 03.02.130." *Id.* Mr. Armstrong summarized the grievance as follows:

> The Grievant presents an issue which alleges since arriving at this facility there have been no religious services for his designated religion and he was denied the opportunity to participate in the kosher meal program. Grievant does not indicate what he wants as relief for filing this grievance.

*Id.* Mr. Armstrong then denied the Step III appeal. *Id.*

Viewing the evidence in the light most favorable to the non-movant, it would appear that plaintiff filed a Step III appeal, that the grievance code was changed between Step II and Step III, and that Mr. Armstrong's search was apparently limited to a review of grievance no. 0601 under the original grievance code of "27b" rather than the amended code of "20z." This scenario could create a genuine issue of material fact as to whether plaintiff exhausted grievance no. 0601. However, even if plaintiff did exhaust grievance no. 0601 through Step III, his complaint is not

5

properly before the court. The Step III response was not issued until August 31, 2009, several weeks after plaintiff filed this action on June 9, 2009. *See* docket no. 1. A prisoner may not exhaust administrative remedies during the pendency of the federal civil rights action based upon that grievance. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999). *See Erdman v. Michigan Department of Corrections*, 52 Fed. Appx. 721, 722 (6th Cir. 2002) (a prisoner must exhaust all of his available administrative remedies before filing a § 1983 action in federal court); *Brown v. Toombs*, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (same). As the Sixth Circuit observed in *Freeman*,

> While we recognize that plaintiff made some attempts to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed. The plain language of the statute makes exhaustion a precondition to filing an action in federal court ("No action shall be brought . . . until such administrative remedies as are available are exhausted."). The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit.

*Id.* (citations omitted). Furthermore, the MDOC's policy directive states that the total grievance process "shall generally be completed in 120 days." *See,* Policy Directive 03.02.130 ¶S. While this is not a mandatory time frame, some courts view this 120-day time frame as a deadline for the MDOC to respond to the Step III grievance. *See, e.g., Sims v Rewerts,* No. 07-12646, 2008 WL 2224132 (E.D. Mich., May 29, 2008). Even if this court viewed the 120-day time frame as a deadline, plaintiff still filed his complaint prematurely, because only 78 days expired between the time he commenced the grievance process on March 23, 2009 and the filing of his complaint on June 9, 2009.

Plaintiff did not properly exhaust grievance 0601 prior to filing this action. Accordingly, defendants are entitled to summary judgment for lack of exhaustion.

**IV.    Recommendation**

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 18) be **GRANTED**.


Dated:  July 23, 2010                          /s/ Hugh W. Brenneman, Jr.
                                               HUGH W. BRENNEMAN, JR.
                                               United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).